## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHNNY CHAMBERS,            )
                            )
        Plaintiff,   )
                            )
v.                          )    Case No. 11-CV-2646-CM-DJW
                            )
KANSAS CITY KANSAS COMMUNITY)
COLLEGE,                    )
                            )
        Defendant.   )
_____)

### MEMORANDUM AND ORDER

This matter is before the court on defendant's summary judgment motion (Doc. 45). Defendant argues that it is entitled to summary judgment on plaintiff's race and age disparate treatment claims and plaintiff's retaliation claim because plaintiff cannot establish a prima facie case. For the following reasons, the court dismisses plaintiff's age-based claims for lack of subject matter jurisdiction, denies as moot those portions of defendant's motion, and grants the rest of defendant's motion.

### I.    FACTUAL BACKGROUND[1]

Plaintiff is an African-American male with a master's degree.[2] Defendant, a Kansas community college, hired plaintiff in 2002 as an adjunct instructor. In 2008, plaintiff sued defendant in federal court alleging various discrimination claims. The parties executed a settlement agreement and release of claims in July 2009.

Under the 2009 settlement agreement, defendant agreed to employ plaintiff as a Resource Center Developmental Math Facilitator ("RCDMF"), effective with the fall 2009 academic year. The RCDMF position is a full-time staff position. Plaintiff's job responsibilities include administering

---

[1]    The following facts are properly supported and not genuinely disputed. In determining these facts, the court views the evidence and draws all reasonable inferences in the light most favorable to plaintiff, the nonmoving party.

[2]    The specific master's degree that plaintiff holds is unclear.

placement tests, preparing students for the math Work Keys Certificate, and assisting with CASA and Accuplacer testing.

Plaintiff transferred to the RCDMF position in August 2009 and was placed on probation. He remained on probation until at least February 10, 2010. Since his transfer, the following events occurred:

(1) Plaintiff's name was misspelled and his title was incorrectly identified in college listings.

(2) Plaintiff's name was not included in defendant's General Catalog 2009-2011.

(3) Plaintiff did not receive books he requested. He requested certain books in the fall of 2009. He did receive some books around that time, but not the books he requested. He asked for the books again in January 2010 and June 2010. He received some of the books later that summer.

(4) Plaintiff, despite his offers to assist, was not invited to participate in or help organize orientation activities.

(5) Plaintiff was not invited to attend Computer Assisted Design ("CAD") training and was not included on some correspondence regarding Accuplacer and Work Keys.

(6) Plaintiff received written instructions for administering the Work Keys test. Plaintiff did not receive additional training on administering the Work Keys test. Carly Eastling provided additional training to other employees.

(7) Plaintiff received a November 11, 2009 performance evaluation that had a total score of 89 and an honesty ranking of 5 (far exceeds requirements). One week later he received another performance evaluation that had the same total score but an honesty ranking of 4 (generally exceeds requirements).

(8) Plaintiff was paid $10,000 less than Ms. Eastling.

(9) Plaintiff was not promoted to faculty or professor.

(10) Plaintiff learned in the fall of 2009 that he was not qualified to receive full benefits because of his classification by KPERS as a "working after retirement employee."

Plaintiff filed the instant complaint on November 23, 2011, alleging various claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act

("ADEA") based on Events 1-10.[3] Defendant moves for summary judgment, arguing that plaintiff cannot establish a prima facie case for his age and race disparate treatment claims or his retaliation claim.

## II. LEGAL STANDARD

Summary judgment is appropriate when there are no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A movant that does not have the burden of persuasion at trial has the initial summary-judgment burden of "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If the movant makes this showing, the burden shifts to the nonmovant to set forth facts from which a rationale trier of fact could find for the nonmovant. *Id.*

## III. ANALYSIS[4]

### A. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's ADEA Claims

The court first addresses defendant's summary judgment motion on plaintiff's age-based disparate treatment claim. Before analyzing the merits, the court addresses a jurisdictional issue. Plaintiff brings a disparate treatment claim and a retaliation claim under the ADEA. He must have exhausted his administrative remedies before filing these claims in federal court. *See Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (explaining that exhaustion of administrative remedies is a jurisdictional prerequisite). This exhaustion requirement serves two goals:

---

[3] The Pretrial Order outlines plaintiff's four theories of recovery: (1) disparate treatment based on race and gender under Title VII, (2) disparate impact based on age under the ADEA, (3) harassment based on race and gender under Title VII, and (4) retaliation under Title VII and the ADEA. Although the second theory of recovery is listed as "disparate impact," the court understands this to be a typographical error based on the stated elements and the context of the Pretrial Order. Regardless, as explained below, the court lacks subject matter jurisdiction over plaintiff's ADEA claims.

[4] The court is mindful of plaintiff's pro se status and broadly construes his papers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But this generous review allows the court neither to create arguments on his behalf, *id.*, nor to excuse him from complying with the procedural rules of this court, *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

(1) it puts the defendant on notice of the allegations, and (2) it conserves judicial resources by giving the defendant and administrative agencies an opportunity to investigate and resolve claims. *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003).

Plaintiff submitted a charge to the Kansas Human Rights Commission ("KHRC") in March 2010 and checked the box for age discrimination. But his factual statement did not include any facts regarding age-based discrimination. Instead, his factual statement repeatedly explained that defendant discriminated against him based on race and gender. (*See* Doc. 67-1 at 2 ("I was subjected to disparate treatment compared to similarly situated Caucasian male and female employees[.]"; *id.* (alleging defendant discriminated against him "due to [his] race, African American, my sex, male".) Based on this description, the KHRC did not investigate age discrimination. (*See* Doc. 50-3 at 44 (expressly stating in the Summary of Investigative Findings that "[n]o allegations were made by [plaintiff] concerning age discrimination and as such, were not investigated").) Neither did the EEOC, which adopted the KHRC's findings. (Doc. 1 at 44.)

Plaintiff contends that merely checking the box on the charge form satisfies the exhaustion requirement. The court disagrees. And the Tenth Circuit has rejected a similar argument. *See Jenkins v. Educ. Credit Mgmt. Corp.*, 212 F. App'x 729, 733 (10th Cir. 2007) (agreeing that the plaintiff failed to exhaust her administrative remedies when she checked a box on her administrative complaint but failed to provide supporting allegations). If the rule were otherwise, a plaintiff could exhaust his claims simply by checking every box on the form and providing no supporting facts. This result would defeat the goals underlying the exhaustion requirement. *See, e.g.*, *Velazquez-Rivera v. Danzig*, 81 F. Supp. 2d 316, 327 (D. P.R. 2000), *aff'd in relevant part by* 234 F.3d 790, 794–95 (1st Cir. 2000) ("Merely checking a box arguing age discrimination and not elaborating those claims does not fulfill

the administrative purposes that a charge with the EEOC is designed to serve, and does not provide a basis for a later federal court discrimination complaint.") (internal quotation omitted).

After reviewing the discriminatory acts described in the charge, the court agrees that the scope of the administrative investigation that could reasonably be expected to follow would not include age discrimination. *See Manning v. Blue Cross & Blue Shield of Kan. City*, No. 12-3190, 2013 WL 1490803, at * 2 (10th Cir. Apr. 12, 2013) (citing *Jones v. United Parcel Servs., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)). The fact that plaintiff checked the age discrimination box does not change this result. Because plaintiff did not exhaust his ADEA claims, the court dismisses these claims for lack of subject matter jurisdiction.[5]

### B. Defendant Is Entitled To Summary Judgment On Plaintiff's Disparate Treatment Claim Based On Race

Next, the court addresses defendant's summary judgment motion on plaintiff's race-based disparate treatment claim. Plaintiff does not have direct evidence of racial discrimination. So the court analyzes plaintiff's disparate treatment claim using the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under this framework, plaintiff has the initial burden of establishing a prima facie case of disparate treatment. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (discussing *McDonnell Douglas*). To establish a prima facie case of disparate treatment, plaintiff must present evidence that (1) he belongs to a protected class, (2) he suffered an adverse employment action, and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for

---

[5] Even if the court had subject matter jurisdiction over these claims, defendant would be entitled to summary judgment on them for the reasons stated in the following sections. The court also notes that there is no evidence of the age of any other employee.

the adverse action.  *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 252–53.  If defendant does so, the burden shifts back to plaintiff to show that there is a genuine issue of material fact as to whether defendant's proffered reasons are pretextual.  *Id.*

### 1. Plaintiff fails to make out a prima facie case

Defendant argues that plaintiff does not satisfy the first step of the *McDonnell Douglas* framework because plaintiff cannot establish a prima facie case.  Specifically, defendant argues that Events 1-7 are not adverse employment actions and that plaintiff lacks evidence that Events 8-10 occurred under circumstances giving rise to an inference of discrimination.  The court agrees.

#### a. <u>Events 1-7 are not adverse employment events</u>

An adverse employment action generally is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation omitted).  Events 1-7 do not meet this definition because there is no evidence that these events caused a "significant change" in plaintiff's employment status.

Instead the evidence before the court indicates that these events were mere inconveniences that did not cause more than de minimis harm to plaintiff's job performance or status.  *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (explaining definition of adverse employment actions).  For example, there is no evidence that the misidentification of plaintiff's title altered his stated job duties, professional status, or benefits.  As another example, there is no evidence that the failure to fill his book requests impacted plaintiff's job performance or opportunities.  Plaintiff similarly fails to explain how his lack of CAD training, his lack of additional Work Keys training, his not being invited to certain meetings, or the reduction in his "honesty" ranking (despite the same overall score) had any discernible impact on his job performance or employment status.  The court is mindful that the Tenth Circuit has liberally defined the phrase "adverse employment action."  *See id.*

But, based on the facts of this case and the evidence before the court, Events 1-7 are not sufficient to support a claim of discrimination.

### b. Events 8-10 did not occur under circumstances giving rise to an inference of discrimination

Defendant concedes that Events 8-10 are adverse employment actions but argues that plaintiff lacks evidence that these events occurred under circumstances giving rise to an inference of discrimination. One method by which a plaintiff can make this showing is to demonstrate that his employer treated similarly situated individuals more favorably. *Luster*, 667 F.3d at 1095. A similarly situated employee is an employee outside of the protected class that performs the same basic job and has similar employment circumstances. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).

Plaintiff identifies several individuals that he contends defendant treated more favorably. But plaintiff fails to provide any specific evidence regarding the employment circumstances of these individuals. For example, he generally does not provide evidence about each individual's education, work history, skills, training, probationary status, KPERS retirement status, or job performance. Instead, he largely lumps all "non-minority" employees together. (*See, e.g.*, Doc. 50-1 at 4, 14, 16, and 24 (generally referring to other employees as being a "non-minority" without any specific information about race).) The court cannot find, given this incomplete information, that any of the individuals are similarly situated.

In addition, the limited evidence plaintiff provides demonstrates significant dissimilarities between him and several of the other employees. For example, Donald Balluch, William McNamee, and John Kessler have different specialties than plaintiff (construction, auto technology, and building and property maintenance, respectively, versus mathematics) and different original jobs (instructor, aide, and instructor, respectively, versus RCMDF). And Carly Eastling has a different work history

(former faculty member of the Kansas Area Technical School ("ATS")[6]) and was reclassified as faculty in 2012 based on a successful union grievance.

The court is mindful that plaintiff's burden to establish a prima facie case is not onerous. *Aragon v. King Soopers, Inc.*, 19 F. App'x 806, 810 (10th Cir. 2001) (noting that while the prima facie burden is not onerous, the plaintiff failed to meet it). But the evidence before the court is completely lacking any factual basis for plaintiff's assertion that his race formed the basis for Events 8-10. There is no evidence of racial slurs, comments from supervisors about plaintiff's race, or any other specific circumstances giving rise to an inference of discrimination. Defendant is entitled to summary judgment on this claim.

### 2. Plaintiff fails to demonstrate pretext

Assuming plaintiff met his initial burden under *McDonnell Douglas*, defendant has come forward with legitimate, non-discriminatory reasons for Events 1-10. *C.R. England*, 644 F.3d at 1043 (noting that this burden is "exceedingly light"). Event 1 is the result of typographical errors and mistakes. Event 2 occurred because the catalog was printed either before, or shortly after, plaintiff received his RCDMF title. For Events 3-5, defendant explains that it did not know that plaintiff was not receiving his books, was not being allowed to participate in orientation activities, was not invited to some training, and was omitted from some meetings. To the extent these actions occurred, defendant explains that they were inadvertent oversights. For Event 6, defendant provided written instructions and explains that plaintiff never requested additional training from Ms. Eastling. Event 7 occurred because the initial evaluation accidentally included a page from another employee's evaluation.

---

[6] In 2008, defendant executed a merger agreement with ATS. The merger agreement allowed ATS employees to be transferred to or hired by defendant. Under the agreement, transferred employees were designated as staff instructors for the first year. During negotiations for the 2009-2010 academic year, some former employees became faculty. Ms. Eastling was a faculty member at ATS, was downgraded to a staff position after the merger, and was not reclassified as faculty in the 2009-2010 negotiations. The Kansas National Education Association filed a successful union/labor grievance on her behalf, which resulted in her reclassification to faculty in 2012. Unlike Ms. Eastling, plaintiff is not a former ATS employee and is not covered by the terms of the merger agreement.

Events 8 and 9 occurred because plaintiff was not subject to the terms of the ATS merger agreement.[7] And for Event 10, it is plaintiff's status as a KPERS retiree that limits his KERPS benefit and not any action or policy of defendant. The burden, therefore, shifts back to plaintiff to show pretext.

A plaintiff can show pretext by demonstrating that the defendant's stated reasons are "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." *Id.* at 1039 (internal quotation omitted) (alteration in original). Plaintiff does not make this showing. He relies on essentially the same evidence discussed above, and it fails for the same reasons. There is insufficient information for the court to conclude that defendant treated other "non-minority" employees differently. And plaintiff does not identify any internal policies that were violated. Although he might disagree with defendant's proffered reasons, he does not provide sufficient evidence that these explanations are unworthy of belief. Defendant is entitled to summary judgment for this additional reason.

### C. Defendant Is Entitled To Summary Judgment On Plaintiff's Title VII Retaliation Claim

The last issue before the court is defendant's summary judgment motion on plaintiff's Title VII retaliation claim. This claim is also subject to the *McDonnell Douglas* burden-shifting analysis, and defendant contends that summary judgment is appropriate because plaintiff cannot make out a prima facie case of retaliation. The court agrees.

To establish a prima facie case of retaliation, plaintiff must come forward with evidence that (1) he was engaged in protected opposition to discrimination, (2) he was subjected to an adverse employment action, and (3) a causal connection exists between the protected activity and the adverse action. *Luster*, 667 F.3d at 1096. Plaintiff lacks evidence for the third element. There is no evidence before the court that the individuals responsible for making promotion decisions even knew about

---

[7] The court notes that plaintiff never provides defendant's criteria and qualifications for promotion.

plaintiff's discrimination complaints.[8] Indeed, there is no evidence on the promotion process, the individuals involved, or the promotion criteria. *See Luke v. Hosp. Shared Servs., Inc.*, No. 12-1219, 2013 WL 1136937, at *4 (10th Cir. Mar. 20, 2013) (affirming summary judgment on retaliation claim because no evidence that those who allegedly caused retaliatory act were aware of the protected activity). And, other than plaintiff's conclusory allegations that retaliation formed the basis for his lack of promotion, the record is completely lacking any factual basis for this claim. Defendant is entitled to summary judgment on this claim.

**IT IS THEREFORE ORDERED** that plaintiff's ADEA claims are dismissed for lack of subject matter jurisdiction. The portions of Defendant's Motion For Summary Judgment (Doc. 45) directed to plaintiff's ADEA claims are denied as moot.

**IT IS FURTHER ORDERED** that the rest of Defendant's Motion For Summary Judgment (Doc. 45) is granted. The court enters summary judgment in defendant's favor on plaintiff's Title VII race-based disparate treatment claim and retaliation claim. Plaintiff's Title VII claims for (1) gender-based disparate treatment and (2) race and/or gender harassment remain for trial.

Dated this 28th day of June, 2013, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
United States District Judge

---

[8] The Pretrial Order explains that the lack of promotion to professor is the adverse action underlying plaintiff's retaliation claim. (Doc. 61 at 23.)